| | |
|---|---|
| Excel Roofing, Inc., a Minnesota Corporation doing business as Excel Roofing, | Civil No. 10-299 (DWF/JJK) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| State Farm Fire and Casualty Company, an Illinois corporation doing business as State Farm Insurance, | |
| Defendant. | |

_____

M. Ryan Madison, Esq., Madison Law Firm, LLC; and William A. Erhart, Esq., Erhart & Associates, LLC, counsel for Plaintiff.

C. Todd Koebele, Esq., Scott G. Williams, Esq., and William L. Moran, Esq., Murnane Brandt, PA, counsel for Defendant.

_____

**INTRODUCTION**

This matter is before the Court on a Motion for Summary Judgment brought by Defendant State Farm Fire and Casualty Company ("State Farm"). For the reasons set forth below, the Court grants the motion.

## BACKGROUND

Plaintiff Excel Roofing, Inc. ("Excel") is a Minnesota Corporation that performed repair work for over sixty homeowners in Minnesota. (Compl. ¶¶ 1, 3 & Ex. A.)[1] Excel entered into contracts with these homeowners to repair property loss that occurred between May 21, 2005, and August 13, 2007. (*Id.*) These contracts provided that Excel would be compensated through the homeowners' respective insurance carriers. (*Id.* ¶ 3.)[2] All of the homeowners in this case were represented by State Farm. At issue in this case are claims for which Excel asserts State Farm did not pay Excel for all of the work Excel performed for State Farm's insureds. Specifically, Excel claims that State Farm

---

[1] Shawn Luther is the sole owner of Excel. (Aff. of Scott G. Williams ("Williams Aff.") ¶ 3, Ex. B (Dep. of Shawn Luther ("Luther Dep.")) at 6-7.)

[2] Excel's contract with homeowners contained the following language:

> This agreement is dependent upon the approval and payment from the Homeowner's insurance company, and no party will have any obligation unless payment has been approved by the homeowner's insurance company and accepted by Excel Roofing. By signing this agreement, the homeowner(s) authorizes Excel Roofing to negotiate directly with the Homeowner's insurance company regarding the scope and cost of the work. The Homeowner(s) will have no liability or responsibility for the cost of the work except for the payment of the deductible. Upon reaching the agreement with the Homeowner's insurance company, Excel Roofing is authorized to schedule and obtain labor and materials in accordance with this Agreement.

(Aff. of William Erhart ("Erhart Aff.") ¶ 5, Ex. 3.)

improperly failed to pay the industry standard overhead and profit on projects where Excel performed three or more trades. (Compl. ¶¶ 6, 8.)[3]

For most of the jobs performed by Excel that are at issue in this case, Excel requested payment for overhead and profit prior to commencing work. (Luther Dep. at 31.) State Farm informed Excel that it would not pay overhead and profit for those particular jobs. (*Id*. at 31, 37-38, 39, 52.)[4] Despite knowing that State Farm would not pay the overhead and profit, Excel proceeded to complete the repairs. Occasionally, Excel did not request overhead and profit until after it had completed repairs. (*Id*.) On those occasions, State Farm "would say that they do not pay overhead and profit." (*Id.*)

The relevant insurance policies consist of Homeowner's Policies, Rental Dwelling Policies, and Apartment Policies. (Aff. of David Dornfeld ("Dornfeld Aff.") ¶ 2.) Each of the Homeowner's and Rental Dwelling Policies contains the following endorsement:

> **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions and the action is started within two years after the occurrence causing loss or damage.

(Williams Aff. ¶¶ 6-7, Exs. E at FE-7223.13 & F at FE-8223.3.) The Apartment Policies contain the following suit-limitation language:

> **Legal Action Against Us.** No one may bring legal action against us under this insurance unless:

---

[3] The claims at issue here do not represent all claims for which Excel performed repairs for State Farm's insureds. Excel does not contest those claims for which overhead and profit were included.

[4] Base service charges were handled in essentially the same way as overhead and profit.

3

  a. there has been full compliance with all of the terms of this insurance;

  b. the loss has become payable as specified in the Loss Payment Condition; and

  c. the action is brought within 2 years after the date on which the direct physical loss or damage occurred.

(Williams Aff. ¶ 8, Ex. G at FE6223.1.)

Excel brought this action on or about January 11, 2010. (Williams Aff. ¶ 5, Ex. D.) In addition to a breach of contract/third-party beneficiary claim, Excel asserts equitable claims for unjust enrichment, *quantum meruit*, and illegal reduction in benefits.

State Farm now moves for summary judgment, arguing that Excel's lawsuit is time-barred as a matter of law under the applicable contractual limitations period.

## DISCUSSION

### I. Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II. Limitations Provision

The only issue before the Court with respect to Excel's breach of contract/third-party beneficiary claim is whether or not the limitations period provisions in the relevant insurance policies apply to Excel's claims.[5] Under Minnesota law, the interpretation of an insurance policy is a question of law. *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 879 (Minn. 2002). Insurance policies are interpreted according to the same principles that govern the interpretation of contracts generally. *Progressive Specialty Ins. Co. v. Widness*, 635 N.W.2d 516, 518 (Minn. 2001); *Nathe Bros., Inc. v.*

---

[5] Excel alleges that it is a third-party beneficiary of the homeowner policies. State Farm denies this allegation, but has agreed that the limitations period is the only issue before the Court. Therefore, for the purpose of this motion, the Court assumes without deciding that Excel is a third-party beneficiary of the policies at issue. As a third-party beneficiary, Excel's rights as to State Farm are measured by the terms of the insurance contracts. *See, e.g.*, *Brix v. General Accident & Assurance Corp.*, 93 N.W.2d 542, 544 (Minn. 1958); *Servias v. T.J. Mgmt. of Minneapolis, Inc.*, 973 F. Supp. 885, 897 (D. Minn. 1997).

*Am. Nat'l Fire Ins. Co.*, 615 N.W.2d 341, 344 (Minn. 2000). Thus, insurance policies must be interpreted to give effect to the parties' intent. *Nathe Bros.*, 615 N.W.2d at 344. If the language of the policy is unambiguous, it must be given its plain and ordinary meaning. *Thommes*, 641 N.W.2d at 880. If the language is ambiguous, it is construed against the insurance company. *Widness*, 635 N.W.2d at 518.

The dispute involves the following language that appears in the policies at issue:

> **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions and the action is started within two years after the occurrence causing loss or damage.

(Williams Aff. ¶¶ 6-7, Exs. E at FE-7223.13 & F at FE-8223.3.)

> **Legal Action Against Us.** No one may bring legal action against us under this insurance unless:
>
> a. there has been full compliance with all of the terms of this insurance;
>
> b. the loss has become payable as specified in the Loss Payment Condition; and
>
> c. the action is brought within 2 years after the date on which the direct physical loss or damage occurred.

(Williams Aff. ¶ 8, Ex. G at FE6223.1.)

State Farm argues that the two-year limitations period bars Excel's lawsuit as a matter of law. In particular, State Farm argues that the relevant policies require that any action against State Farm be brought within two years of the date of occurrence or loss, that the relevant dates of loss were between May 21, 2005, and August 13, 2007, and that Excel did not commence suit within two years after the occurrences causing the property loss.

6

Excel argues that the limitations period should not preclude its claims because the policy language is ambiguous and should be declared void, the limitations clause is not enforceable against Excel as a loss payee, and there are fact issues with respect to whether State Farm has waived or should be estopped from asserting the limitation defense.

A. **Enforceability of Limitations Period**

Minnesota law provides for a six year statute of limitations governing contracts. *See* Minn. Stat. § 541.05. Minnesota law also permits parties to an insurance contract to shorten this period, provided no specific statute prohibits the use of a shorter limitations period, and that the time period is not unreasonable. *Henning Nelson Constr. Co. v. Fireman's Fund Ins. Co*., 383 N.W.2d 645, 650-51 (Minn. 1986).

Excel does not cite any conflicting statute. Nor does Excel contend that the two-year time period here is unreasonably short. Instead, Excel asserts generally that any delay in filing suit was caused by Defendant's scheme to withhold proper payment to contractors. As discussed below with respect to Excel's estoppel argument, however, this assertion is unsubstantiated. Here, the record demonstrates that for the majority of cases at issue, Excel knew that State Farm would not be paying overhead and profit prior to performing any work. And on the few occasions where Excel did not request overhead and profit until after completing repairs, Excel learned that State Farm would not be paying the requested overhead and profit when Excel made those requests. Excel has not

7

pointed to any facts in the record to dispute the reasonableness of the limitations period.[6]
Moreover, State Farm has cited to several cases in which courts have found a two-year time period to be reasonable. *See, e.g.*, *F.D.I.C. v. Hartford Accident & Indem. Co.*, 97 F.3d 1148, 1151 (8th Cir. 1996); *Minnesota Mut. Fire & Cas. Co. v. North Lakes Constr., Inc.*, 400 N.W.2d 367, 370 (Minn. Ct. App. 1987). The Court concludes that, as a matter of law, the two-year limitations period at issue here is reasonable.

Excel argues that the policy language is ambiguous and should be declared void. In particular, Excel asserts that the word "action" is not defined by the policy and has multiple dictionary definitions. Excel also asserts that the policy contains other conflicting language.[7] Based on this alleged ambiguity, Excel asserts that the policies

---

[6] One factor used in determining reasonableness is the amount of time remaining under the limitations clause after the insurer denies a claim. *See L & H Transp., Inc. v. Drew Agency, Inc.*, 403 N.W.2d 223, 226 n.1 (Minn. 1987). Here, Excel does not claim that it was left with an unreasonably short period of time to bring a suit after State Farm denied a claim. Indeed, with most of the claims at issue, Excel knew their requests for overhead and profit were denied prior to the commencement of the repairs. The Court notes, however, that there could be a factual scenario where the time between the denial of a claim and the running of the statutory period would be unreasonably short. That is not the case here.

[7] In particular, Excel cites to a policy provision in a homeowner's policy that provides that in order to recover "replacement cost," work must be done within two years of the loss. (Erhart Aff. ¶ 12, Ex. 10.) Excel asserts that if State Farm's interpretation of the limitations period is accepted, the language regarding replacement cost is inconsistent. Any potential inconsistency between the limitations provision and this replacement cost provision, however, does not invalidate the limitations provision. It is apparent to the Court that the parties intended to require that any legal action be brought within the two-year period.

8

only require that a claim be reported to State Farm within two years, but that the time to bring a legal action is dictated by the six-year statute of limitations for contract claims.

The Court disagrees. The policies clearly and unambiguously state that no "action" shall be brought unless it is started within two years after the loss occurrence. It is also clear from the policy language that the word "action" referred to is a "legal action." The Homeowner's and Rental Dwelling Policies use the bolded heading titled "**Suit Against Us**" to introduce the limitations period. In addition, the Apartment Policies use the bolded heading "**Legal Action Against Us**" and specifically state that "no one may bring a *legal* action" unless the action is brought within the two-year limitations period. Based on the clear and unambiguous language of the policies, the Court concludes that the policy language places a two-year time limitation on lawsuits.[8] Because the record also demonstrates that Excel did not commence this lawsuit until January 11, 2010, more than two years after the dates on which the damage occurred to the relevant properties, the Court concludes that Excel's breach of contract/third-party beneficiary claim is time-barred as a matter of law.

---

[8] This interpretation of "action" is consistent with Minn. Stat. § 541.05. ("**Subdivision 1. Six-year limitation**. Except where the Uniform Commercial Code otherwise prescribes, the following actions shall be commenced within six years: . . . (1) upon a contract or other obligation, express or implied, as to which no other limitation is expressly prescribed.").

### B. Loss Payee

Excel also argues that the policies' limitation clauses are not enforceable against it because Excel is "the loss payee." As an initial matter, Excel asserts that it "essentially stands in the shoes of the loss payee" but does not otherwise demonstrate that it is the loss payee on any of the relevant insurance policies. (Pl.'s Mem. of Law in Opp. of Def.'s Mot. for Summ. J. at 15-16.) For this reason alone, Excel's loss payee argument fails.

Excel further argues that although the parties to a contract may impose a time limitation during which an action arising under the contract may be brought, such a limitation is not enforceable against a loss payee who is not a party to the contract unless such application is expressly allowed under the contract. In support, Excel relies exclusively on *Loram Maintenance Way, Inc. v. Consolidated Rail Corp.*, 354 N.W.2d 111 (Minn. Ct. App. 1984).

Such reliance, however, is misplaced. First, the Court in *Loram* did not resolve the issue of whether a suit limitation could apply to a loss payee. Instead, the court explained that it "*could* justifiably construe the limitations period as applying only to insureds" but ultimately concluded that "*even if* such limitation clauses could be interpreted to apply to loss payees," they should not be enforced absent a showing of prejudice to the insurer. (*Id*. at 114 (emphasis added.)) Second, that specific ruling in *Loram* was implicitly overruled by the Minnesota Supreme Court in *L & H Transport*. In *L & H Transport*, the Minnesota Supreme Court explained:

> In *Loram*, the Court of Appeals, addressing the issue of whether a suit

> limitation clause in the insurer's policy barred a suit by the insured, held
> that suit was barred only if the insurer could show prejudice. *Id*. at 114.
>
> Although we declined to review the *Loram* decision, in *Henning
> Nelson Const. Co. v. Fireman's Fund Am. Life Ins. Co*., 383 N.W.2d 645
> (Minn. 1986), we addressed the same issue of whether a suit limitation
> clause in the insurer's policy barred a suit by the insured. We held that
> prejudice to the insurer was not a proper consideration; rather, the rule is
> that a suit limitation clause will bar an untimely suit if the clause does not
> conflict with a specific statute and if the limitation period provided for is
> not unreasonable in length. *Henning*, 383 N.W.2d at 650-51.
>
> . . .
>
> To the extent *Loram* is inconsistent with our decision in *Henning*,
> *Loram* is wrongfully decided.

(*L & H transport*, 403 N.W.2d at 225-26.)

For these reasons, the Court concludes that *Loram* does not support Excel's position that the policies' limitations clauses are not enforceable against it because Excel is a loss payee.

### C. Estoppel/Waiver

Next, Excel argues that factual issues exist as to whether State Farm has waived or should be estopped from asserting the limitations defense. In support, Excel asserts that State Farm has been engaged in a campaign of deceptive practices designed to short general contractors of overhead and profit on claims that required the employment of three or more skilled tradespersons to effect covered repairs. In particular, Excel asserts that State Farm is engaged in a scheme that involves the manipulation of Xactimate

11

software.[9]  Excel asserts that it learned that State Farm was wrongfully withholding overhead and profit after discovering litigation going on around the nation that involved the same issue.  Excel further asserts that it was "lulled into inactivity by Defendant's machinations."  (Pl.'s Mem. of Law in Opp. of Def.'s Mot. for Summ. J. at 17.)

An insurer's conduct can estop the assertion of a time limitation contained in an insurance policy if the facts show that it would be "unjust, inequitable, or unconscionable to allow the defense to be interposed."  *L & H Transport*, 403 N.W.2d at 227 (citation omitted).  Estoppel is ordinarily a question for the jury, but "when only one inference can be drawn from the facts," it is a question of law.  *Id*.  To invoke the doctrine of equitable estoppel, Excel must establish (1) that promises or inducements were made, (2) that it reasonably relied on the promises, and (3) that it will be harmed if estoppel is not applied.  *Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 919 (Minn. 1990).

In support of its assertion that State Farm should be estopped from asserting the limitations period, Excel offers mostly vague and unsubstantiated claims with no record support.  These allegations are therefore insufficient to avoid summary judgment.  *Liberty Lobby, Inc.*, 477 U.S. at 256.  The only specific evidence that could support Excel's invocation of estoppel is the affidavit testimony of Shawn Luther, wherein Luther states that with respect to the claims at issue here he was informed by State Farm "to remove

---

[9]  State Farm requires general contractors to use Xactimate to determine the cost of repairs. (Luther Aff. ¶ 4.)  Xactimate is a computer program that adjusts an estimate to account for what contractors are charging in the local area.

the overhead and profit from [his] estimate . . . and that it would be paid at a later date." (Luther Aff. ¶ 11.)

Luther's affidavit testimony contradicts the testimony given by Luther at his deposition. At his deposition, Luther testified that Excel typically requested overhead and profit prior to starting work and that State Farm would inform Excel that the requested overhead and profit would not be paid on a particular job. (Luther Dep. at 20, 27, 31, 37-38.) He was questioned with respect to those claims as follows:

> Q. So you knew before you went ahead and did the job that State Farm was or was not going to pay overhead and profit?
>
> A. For the most part, yes.
>
> . . .
>
> Q. In the vast majority of circumstances or jobs on which you worked where you would provide the estimate to State Farm, they would look at it and say we're not going to pay certain items, take those out, would you take those out and go ahead and perform the job?
>
> A. Generally speaking, although they would – I would like to clarify that they would tell me they do not pay certain things.
>
> Q. Fair enough.
>
> A. Or they would tell me to remove certain items from the estimate.
>
> Q. Okay. That would be done before you did any work on the job?
>
> A. Generally speaking, yes.
>
> Q. And you would go ahead and do the job being told that by State Farm?
>
> A. Yes.

(*Id*. at 37-39.)

Further, with respect to claims where overhead and profit were requested by Excel prior to the start of any work, Luther testified to the following:

> A. We asked for prior to the start of any repairs.
>
> Q. Once you got paid, you let the matter rest, and then you decided that this was the time to bring a lawsuit in 2010?
>
> A. Not entirely accurate but –
>
> Q. I know some activity was occurring in 2009.
>
> A. Yeah.
>
> Q. It wasn't until 2009 that any effort was really made to try to get the overhead and profit back?
>
> A. An effort was made. It was made during the demand process. And it was basically demanded of us to remove overhead and profit from our estimate.

(*Id*. at 31.)

Luther further testified that on a "few occasions," Excel would request overhead and profit after completing repairs. In those cases, Luther testified that State Farm "would say that they do not pay overhead and profit." (*Id*. at 30.)

Despite repeated questioning on the topic, however, Luther never testified that he was promised by State Farm that overhead and profit would be paid in the future. State Farm contends that Luther's affidavit testimony, which was submitted in opposition to State Farm's motion for summary judgment, cannot be used to create a disputed issue of material fact because it directly contradicts Luther's prior deposition testimony.

14

The Eighth Circuit Court of Appeals has addressed the issue of "sham affidavits," stating:

> Parties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment. . . . While district courts must exercise extreme care not to take genuine issues of fact away from juries, a party should not be allowed to create issues of credibility by contradicting his own earlier testimony. Ambiguities and even conflicts in a deponent's testimony are generally matters for the jury to sort out, but a district court may grant summary judgment where a party's sudden and unexplained revision of testimony creates an issue of fact where none existed before. Otherwise, any party could head off a summary judgment motion by supplanting previous depositions *ad hoc* with a new affidavit, and no case would ever be appropriate for summary judgment.

*Am. Airlines, Inc. v. KLM Royal Dutch Airlines, Inc.*, 114 F.3d 108, 111 (8th Cir. 1997) (citations omitted). "[A] properly supported motion for summary judgment is not defeated by self-serving affidavits." *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006).

Here, Luther's affidavit testimony contradicts his prior deposition testimony with respect to the issue of whether State Farm ever instructed Luther to remove overhead and profit from his estimate with the promise that it would be paid in the future. Accordingly, the Court will not consider the affidavit. Having no evidentiary support for its claim of equitable estoppel, the Court concludes that State Farm neither waived nor is estopped from asserting the limitations defense.

## III. Equitable Claims

In its Complaint, Excel also asserts the equitable claims for unjust enrichment, *quantum meruit*, and illegal reduction in benefits.[10] Excel's equitable claims are based on the same subject matter as its third-party beneficiary claims. Because Excel's third-party beneficiary claims are governed by the relevant insurance policies, Excel cannot maintain its equitable claims. *See M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 880 (8th Cir. 2010) (noting equitable relief cannot be granted when the rights of the parties are governed by a valid contract).

Excel asserts, however, that while it relies on third-party beneficiary status for its breach of contract claim, it does *not* with respect to its equitable claims. Excel further argues that because the issue of whether Excel is a third-party beneficiary is not before the Court, summary judgment on Excel's equitable claims is not appropriate.

The Court disagrees. To establish a claim of unjust enrichment, Excel must show that State Farm "has knowingly received something of value, not being entitled to the benefit, and under circumstances that would make it unjust to permit its retention." *Southtown Plumbing, Inc. v. Har-Ned Lumber Co., Inc.,* 493 N.W.2d 137, 140 (Minn. Ct. App. 1992). Minnesota courts have held that "[a]n action for unjust enrichment may be based on failure of consideration, fraud, mistake, and situations where it would be morally wrong for one party to enrich himself at the expense of another." *Anderson v. DeLisle,* 352 N.W.2d 794, 796 (Minn. Ct. App. 1984). Normally, "an unjust enrichment

---

[10] State Farm asserts that it is unaware of a cause of action for "illegal reduction of benefits" in Minnesota. Excel does not dispute this. Accordingly, the Court dismisses this claim.

16

claim does not lie merely because one party benefits from another's efforts and obligations, but rather it must be shown that a party was unjustly enriched in the sense that the term unjustly could mean illegally or unlawfully." *Schlegelmilch v. Schlegelmilch,* No. C1-00-951, 2001 WL 69998, at *7 (Minn. Ct. App., Jan. 23, 2001) (quotations omitted). Moreover, the basis of a recovery in *quantum meruit* is that "the defendant has received a benefit from plaintiff which it is unjust for [the defendant] to retain without paying for it." *Ylijarvi v. Brockphaler*, 7 N.W.2d 314, 319 (Minn. 1942).

Here, there is no record support for Excel's equitable claims. In particular, the record contains no facts suggesting that State Farm benefitted unlawfully or unjustly or that State Farm was actually and wrongfully enriched or that Excel is entitled to recovery in *quantum meruit*. Thus, summary judgment in favor of State Farm is appropriate on this claim even if not foreclosed by Excel's third-party beneficiary claims.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

1. State Farm's Motion for Summary Judgment (Doc. No. [16]) is **GRANTED**.

2. Excel's Complaint (Doc. No. [1]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 16, 2010      s/Donovan W. Frank
                              DONOVAN W. FRANK
                              United States District Judge

17